### Simon Page & al. versus Samuel S. Smith.

When exceptions from the District Court, in an action of *scire facias* against the defendant as a trustee, under the provisions of Rev. Stat. c. 119, come before this Court, no question is to be considered, unless it be necessarily and clearly presented by the exceptions.

In *scire facias* against one who had been charged as trustee, the facts disclosed in the original process are properly to be taken into consideration with those subsequently introduced in the disclosure on the *scire facias*, in order to determine whether the trustee was rightly chargeable, as well as in reference to the amount, if any, which the plaintiff is entitled to recover of him.

Although as a general principle, there must be a clear admission of goods, effects, or credits, not disputed or controverted, by the supposed trustee, in order to charge him, yet this principle does not apply to a case coming under Rev. Stat. c. 119, § 69, by which the supposed trustee may be charged, "if he shall have in his possession goods, effects or credits of the principal defendant, which he holds under a conveyance, that is fraudulent and void as to the creditors of the defendant."

In determining whether the supposed trustee holds goods, effects, or credits of the principal defendant under a conveyance thereof fraudulent as to creditors, the determination is to be made by the Court as if sitting in equity; the denial of the trustee of any frudulent design must be allowed the force it would have in an answer to a bill in equity, charging him with the fraud; and if the facts disclosed show the denial to be untrue, he must be adjudged to be chargeable as trustee.

In a case coming under that section of the statute, the ascertainment of the matters of fact, come within the province of the District Judge; and exceptions do not lie to his decision of such matters of fact.

When the conveyance is alleged to be fraudulent, if the circumstances, as exhibited by the disclosures of the supposed trustee, present a case so unlike any thing that would ordinarily occur in a *bona fide* transaction, that it excites strong suspicion of fraud, and the supposed trustee, if in fact innocent, has the means of making his innocence appear quite within *his* power, and does not do it, it is but reasonable, that the conclusion should be against him.

EXCEPTIONS from the Middle District Court, REDINGTON J. presiding.

This was an action of *scire facias* against Samuel S. Smith as trustee of Nathan T. Smith. The original action was assumpsit by the same plaintiffs against Nathan T. Smith and the present defendant as trustee, the damages demanded being less than two hundred dollars. In that action the present de-

fendant made two disclosures, and was adjudged thereon to be trustee, at the August Term of the Middle District Court for the County of Kennebec, 1843, the debt being $51,49, and costs $20,11. Execution issued on August 26, 1843; and on Sept. 23, 1843, a deputy sheriff of that County returned thereon that he had made diligent search for the trustee, but could not find him, and had "made a demand on him for the amount of the within execution by leaving an attested copy thereof at his last and usual place of abode." On Oct. 20, 1843, a deputy sheriff of the County of Penobscot, made a return on the same execution, that he had made a demand on Samuel S. Smith personally, and that he had refused to disclose or discover effects of the principal, or to pay the execution or any part thereof. The papers do not show at what time this action of *scire facias* was commenced, but it appears that the present defendant made a disclosure therein at the August Term, 1844, and also an additional one at the same term. The decision of the District Judge was thus recorded. "Upon the several disclosures taken together it is adjudged, that the plaintiff in *scire facias* recover $77,84, that being the amount due on the original judgment."

"To the above adjudication the respondent excepts."

No other questions of law were presented on the papers, excepting such as might be made to appear upon an inspection of the answers.

The questions raised, it is believed, will be sufficiently understood from the opinion of this Court and the arguments of counsel, without copying the long disclosures of the trustee.

The case was argued in writing.

*Morrill*, for the defendant.

The disclosures show a purchase of real estate by the trustee, of the original defendant in March, 1842, of $2500. Included in this purchase is the sale and assignment of a certain mortgage, made originally to secure about $200.

It will not be insisted, that the trustee is chargeable on account of being the grantee of the principal defendant. The law is well settled, that the grantee of lands, is not liable to

this process; not even where the lands have been fraudulently conveyed. *Howe* v. *Field*, 5 Mass. R. 590; *Russell* v. *Lewis & tr.* 15 Mass. R. 128; 9 Pick. 562.

But it may be supposed, that the trustee holds the assignment of the mortgage, without payment, and therefore fraudulently, as to creditors. This supposition is founded upon the construction, which may, at some time, have obtained, in relation to disclosures of this kind, namely: that it must appear from the disclosure that the trustee is not chargeable. This is not now understood to be the doctrine; and if it ever existed, has been merged in the principle of the case of *Rich* v. *Reed & tr.* 22 Maine R. 28, where the Court held, in order to charge the trustee, " there must appear to be, from the disclosure, a clear admission of goods, effects and credits, not disputed or controverted," &c.

There is, in this disclosure, " no clear admission of goods, effects, &c. in the hands of the trustee, not disputed, or controverted; on the contrary, the trustee states, that $2500, was the price agreed upon, for the real estate and the mortgage, and that he paid that sum in his labor and notes of the original defendant.

2. This *scire facias* is prematurely commenced.

The defendant had the life of the execution within which to pay the original execution; and *scire facias* cannot be maintained until the ninety days have elapsed, and the officer has made his return on said execution, that it is unsatisfied.

Judgment was recovered in the original suit, at the August Term of District Court, and the execution issued the 26th of same month. This *scire facias* was sued out, Nov. 9, following, when the original execution had yet fifteen days to run.

3. *Scire facias* cannot be maintained here, because the goods and effects supposed to be in the hands and possession of the trustee, were not demanded of him, by virtue of the execution within thirty days next after final judgment, and therefore the attachment was dissolved.

A demand upon the trustee, within 30 days next after final judgment, is required by c. 119, Rev. Stat. § 80. Judgment

was recovered, against the original defendant 25th day of August, 1843. On the 23d day of Sept. 1843, Hains, a deputy sheriff for Kennebec County, makes return that on that day he "left a copy of the execution, at the last and usual place of abode of said trustee," in Mt. Vernon in said County. This act of the officer is within the 30 days, but it does not amount to a demand, as required by the statute.

When the trustee is an inhabitant of the State and within the State, the demand on him, by the officer holding the execution, must be personal. See same chapter, § 74. And this mode of demand, attempted by the officer, is provided for in § 82, "when the officer, holding the execution cannot find the trustee in the State."

The return of the officer does not state that he "cannot find the trustee in the State," nor is there any proof, or suggestion even, that he was out of the State, but on the contrary he is shown to be in the State, a few days after, by the return, upon the same execution of Wilson, a deputy sheriff for Penobscot County, where on the 20th of Oct. 1843, personal notice was made on him.

The trustee being within the State, the demand made by Hains was not effectual within § 74; and the demand made by Wilson, was not effectual, because it was not within the thirty days next after final judgment.

But the act of Hains is defective in another fatal point. Section 82 provides, "when the officer holding the execution cannot find the trustee in the State, a copy of the execution may be left, &c. with notice to the trustee, indorsed thereon, and signed by the officer, signifying that he is required to pay and deliver towards satisfying said execution, the goods, effects and credits for which he is liable."

Hains makes return, that he has made demand on trustee, "for the amount of the within execution," "by leaving an attested copy;" whereas he should have made demand, "for the goods, effects, and credits, for which he is liable, by leaving a copy of the execution," together "with notice to the trustee, indorsed thereon and signed by the officer," &c. It

does not appear that any notice to the trustee, was indorsed on the execution and signed by the officer, nor any request to deliver goods, effects, &c.; but the officer returns, simply, that he left a copy of the execution.

It cannot be that so important an omission, designed, as may well be supposed, to apprise the trustee of what is required of him, should be immaterial, and that such an act of the officer, would be considered as constituting a demand, in a case when the trustee cannot be found in the state.

*Howe,* for the plaintiffs.

The disclosures show that the defendant, when twenty-five years of age, and without property of his own, purchased of N. T. Smith, his brother, whose trustee he is alleged to be, certain real estate, for which he was to pay $2500; and that in payment he set off a claim against said N. T. Smith for labor $450, and the balance was paid by cancelling notes purchased of his brother, Abram Smith, for $1516, the date of which he does not recollect, nor whether they were indorsed by either of the two previous holders. The deed was sent to the Register's office by the hand of his brother Abram, where it was recorded on the day of the date of the deed at 7 o'clock, A. M.

In the first disclosure the defendant refuses to state how he paid Abram for his notes, and for that cause, probably, was charged as the trustee of Nathan T. Smith.

Upon disclosure on *scire facias,* he answers that he gave Abram his own note for $1200, for the notes against Nathan. So that if the sale be *bona fide* Abram sold notes amounting to some $2000, against a man able and willing to pay in real estate, for a note of $1200, against a man not worth a dollar.

The whole transaction, we say, was fraudulent. But it is said, it not being a sale of " goods, effects or credits," he cannot be charged under § 69 of c. 119, Rev. St.

His third disclosure shows a transfer, at the same time of the above, of certain notes and a mortgage, amounting to some $200, for no other and further consideration than is stated

above. This property comes within the intent and meaning of the statute, so clearly comes under its provisions and is so widely different from the case cited by defendant of *Rich* v. *Reed*, 22 Maine R. 28, as to render argument unnecessary.

2d. This writ was not prematurely sued out.

The return of Wilson, deputy sheriff, shows precisely the state of things, set out in § 74, c. 119, Rev. Stat. as the ground of *scrie facias*.

3d. The attachment was not dissolved.

Hains, a deputy sheriff for Kennebec County, the residence of the defendant, returns that he could not find the defendant " within his precinct," beyond " his precinct" he was not empowered to look, nor could he return more.

Nor is his return in anywise defective. The statute prescribes no form for a return, nor any form of indorsement on the copy, but says in substance, that a " demand must be made within 30 days by leaving an attested copy of execution with something indorsed thereon, signifying," &c. The officer returns that he made such demand, and by leaving such copy; but what he indorsed thereon thus significant, he does not return, nor is he required to. The defendant might have shown that indorsement under § 79 of same chapter, and taken the opinion of the Court upon its significancy, the only matter, we apprehend, for the Court to pass upon even in that case.

But this demand was not necessary within 30 days, as see proviso to § 80, by which this attachment was preserved until 30 days after demand made.

But if the attachment was dissolved, it was not for the defendant's benefit; nor can he thus answer to the *scire facias*, save to protect himself from having paid over under a second attachment, or to the original defendant, neither of which is suggested; but on *scire facias*, this defendant expressly answers, that he has paid nothing farther than he paid under the original contract.

The defendant is too late with this objection, never having raised it in the Court below; as appears by the exceptions;

the judgment of that Court being grounded " upon the several disclosures taken together," no other issue being presented.

No attachment of property holds more than 30 days unless in excepted cases, but one whose property is seized upon execution cannot save it by alleging a dissolution of the attachment made upon mesne process. The demand of Wilson and the *scire facias* are tantamount to a subsequent attachment, and the defendant's rights are protected under § 79 of the same chapter, which allows him to " prove any matter proper for his defence," which matter we say is : —

1st. That he had no goods of the original defendant liable to attachment.

2d. That they had been previously attached.

And by the same section the parties are entitled to " such judgment as law and justice require, upon the whole matter appearing," &c. which judgment we ask.

The opinion of the Court was drawn up by

›WHITMAN C. J. — The *scire facias* is against the defendant as the trustee of Nathan T. Smith ; and comes before us upon exceptions to the adjudication of the District Court, that the defendant, upon his disclosure made in this suit, taken in connection with his disclosure in the original suit, was chargeable to the extent of the amount of the debt due to the plaintiffs from said Nathan. When a cause is thus before us, no question is to be considered, except it be necessarily and clearly presented by the exceptions. One point, upon which the counsel for the defendant has, with much apparent confidence, addressed to us an argument, we think is not open to our consideration. It is, that the property, for which the defendant was adjudged chargeable in the original suit, was not demanded of him within thirty days next after the rendition of judgment therein. This might have been pleaded in bar of the claim upon *scire facias*, or have been introduced by way of disclosure ; without which the matter could not have been regularly before the Court. The attention of the Court below could not otherwise be called to the consideration of it. And

no exceptions, clearly, would lie in such case, if it escaped the animadversion of the Court.    No allusion appears to have been made to any such question, till introduced in argument in this Court.    The Judge below, therefore, did not err in reference to it.

On the disclosure in the original action the defendant was adjudged to be chargeable, and in that adjudication he acquiesced; and cannot, therefore, now be at liberty to complain of it.    The facts then disclosed, however, would properly be taken into consideration, with those subsequently introduced in the disclosure in this suit, in order to determine whether the defendant was properly chargeable, as well as in reference to the amount, if any, which the plaintiff was entitled to recover of him.

Upon the original disclosure it would seem, that the defendant here was held to be chargeable upon the ground, that he had in his hands goods, effects or credits belonging to Nathan T. Smith.    Yet nothing but real estate then appeared to have been in his hands, belonging to Nathan.    Why such should have been the adjudication does not appear.    The conveyance was probably deemed to have been designed to effectuate a fraud upon the creditors of the latter.    There would seem to have been no other ground upon which, under that disclosure, the defendant could have been held chargeable.    That such was the design of the conveyance might well be apprehended from the disclosure.    We would not, however, be understood, considering the nature of the estate conveyed, as it then appeared to be, to intimate that we should have held the defendant chargeable.    But the case, as finally presented by the additional disclosure in this process, taken in connection with the former, exhibits a much stronger ground for charging the defendant.

It is urged that no one can be charged as trustee in a writ of foreign attachment, unless there appears to be, as held by Mr. Justice Story, in *Picquet* v. *Swan*, 4 Mason, 460, "a clear admission of goods, effects or credits, not disputed or controverted by the supposed trustees, before they can be truly said to have them in deposit or trust;" and that nothing of

the kind appears in this case. As a general principle, the doctrine, as contended for, is correct, and was applicable in the case cited by the counsel for the defendant, of *Rich* v. *Reed & al. & tr.* The supposed trustee in that case was a deputy sheriff, and as such had attached certain goods. The attempt was to make him chargeable as the trustee of a supposed owner, when he had attached them as the property of another person. He did not and could not have been expected to state them to be otherwise than the supposed property of the individual, as whose he had attached them. To such a case the doctrine of Mr. Justice Story well applied.

The case at bar is peculiar. It is supposed to come within the provision of the Rev. Stat. c. 119, § 69. It is there enacted, that " if any person, summoned as trustee, shall have in his possession any goods, effects or credits of the principal defendant, which he holds under a conveyance that is fraudulent and void, as to the creditors of the defendant, he may be adjudged a trustee on account of such goods, effects or credits." This is a new statutory provision. It clearly contemplates, that the Courts shall decide upon examination of a disclosure, made by a person attempted to be charged in a process of foreign attachment, for any goods, effects or credits, conveyed to him by the principal defendant, whether they were or were not so conveyed in contravention of the provisions of the statute of the 13th of Elizabeth, c. 5. If they were, the conveyance, so far as creditors are concerned, is to be held null and void. This determination must be made by Courts, doubtless, as if sitting in equity. The denial of the trustee of any fraudulent design must be allowed the force it would have in an answer to a bill in equity, charging him with the fraud. In either case, if the facts disclosed show the denial to be untrue, he must be rendered chargeable. In such case the doctrine, as laid down by Mr. Justice Story, would be inapplicable.

This case presents somewhat of an anomaly. The Judge in the Court below has not indicated the particular grounds, upon which he considered the defendant chargeable. It is manifest

that he must have been satisfied, that the matters of fact were otherwise than the defendant, by his disclosure, would have them understood to be; and, indeed, it would seem that he must have ascertained, that they were such as would bring the case within the purview of the section of the statute before cited. If so, the ascertainment of the matters of fact, being within his province, and not open to exceptions, the law, as applicable thereto, could not be otherwise than correctly decided; if there were goods, effects or credits embraced in the conveyance from Nathan to the defendant; and such by the last disclosure it appears there were, to an amount greater than was sufficient to pay the plaintiff's demand. It is impossible, therefore, for us to perceive that the Court below erred in matter of law, without which exceptions could not be sustained.

But, if it were competent for us to go into a consideration of the matters of fact, it would be very difficult for us to come to a conclusion, that they were otherwise than we have supposed they were found to be in that Court. Nathan and the defendant were brothers, between whom a confidence may be supposed to have existed. The defendant was only between twenty-four and twenty-five years of age; and manifestly without property, other than he had been enabled to accumulate, after arriving to the age of twenty-one years, from his earnings as a laborer hired by the year on a farm, and in brick making, which he pretends had amounted to $425, clear of expenses. His brother Nathan, it is evident, was much embarrassed. Thus situated, he says, in his first disclosures, he purchased real estate of Nathan, and paid him twenty-five hundred dollars for it, in his claim against him for services, and in four notes he held against him; three of them for five hundred dollars each, which he had purchased of his brother Abram, in December or January next previous, bearing date, he thinks, about 1830. If so dated at the time he purchased them, and when he delivered them up to Nathan, if on interest, they would have amounted to nearly twenty-five hundred dollars. These notes, he says, he purchased of his brother Abram, for

$1250, for which he gave him his note. He says further, that, though these notes, of so large an amount, and of so long standing, had been in the hands of his brothers Abram and Joseph, yet, that he never heard of them till he purchased them as before stated. He says further, that he never consulted Nathan about the purchase of the estate before the day when the conveyance was made. And it appears in his final disclosure, that the consideration of twenty-five hundred dollars, paid by him, instead of its being all for real estate, was in part for two notes, amounting to a little short of two hundred dollars, secured by mortgage, which Nathan transferred to him. These circumstances present a case so unlike any thing that would ordinarily occur in a *bona fide* transaction, that, to say the least of it, should excite strong suspicions of fraud. And when such is the case, if the party implicated be in fact innocent, and has the means of making his innocence appear quite within his power, and does not do it, it is but reasonable, that the conclusion should be against him. Now, had not the defendant the means of proving the transaction to have been free from any taint of fraud, if such were its character?

The statute before cited, § 79, provides, that on the re-examination of any trustee on *scire facias*, " he may prove any matter proper for his defence." The defendant could have examined his three brothers, who were participators in the matters connected with his defence, who, it must be believed, could have given evidence as to every fact having reference to the alleged purchase. Not having done so, if it had been within our province to ascertain the facts, we do not perceive any good reason why we should not have come to a conclusion similar to that to which, we must suppose, the Judge in the Court below had arrived.

*Exceptions overruled— Judgment of the Court*
*below affirmed with additional interest and costs.*